IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO.

MOSHE KATZBURG, individually, and
on behalf of all others similarly situated,

CLASS ACTION

    Plaintiffs,

v.

ALLY FINANCIAL INC. and
ALLY BANK LEASE TRUST,

    Defendants.

_____/

# COMPLAINT

Plaintiff, Moshe Katzburg, individually and on behalf of all others similarly situated, through undersigned counsel, files this Complaint against Defendants Ally Financial Inc. and Ally Bank Lease Trust, and alleges the following:

## I. PARTIES

1. Plaintiff Moshe Katzburg is an individual over the age of 21 residing in Palm Beach County, Florida.

2. Defendant Ally Financial Inc. ("Ally Financial") is a Delaware financial services corporation with its principal place of business in Detroit, Michigan. Ally Financial created the SmartLease Agreement at issue in this case. Ally Financial financed and serviced all auto leases acquired by Defendant Ally Bank Lease Trust. Ally Financial was listed as the first lienholder on

Plaintiff's Certificate of Title. Ally is regularly engaged in leasing, offering to lease, and arranging to lease under the SmartLease agreement.

3. Defendant Ally Bank Lease Trust ("ABLT") is a limited purpose Delaware trust created by Ally Financial, which acquires vehicles and related consumer leases from dealers, with its principal place of business in Detroit, Michigan. ABLT is primarily in the business of asset-backed securities. ABLT is wholly-owned by Ally Central Originating Lease LLC, which in turn, is a wholly-owned special purpose subsidiary of Ally Bank, which is in turn a subsidiary of Ally Financial. Ally Bank provides the money to ABLT to purchase the leases through intercompany advances. Ally Financial or Ally Bank, as an agent of ABLT, is always noted as first lienholder on all certificates of title to the leased vehicles. ABLT pledges the lease assets to Ally Bank in consideration for the advances from Ally Bank. ABLT was created by Ally Bank and Ally Financial to satisfy special legal and operation requirements for the securitization of the lease assets.

## II. JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff's Consumer Leasing Act claim arises under the laws of the United States, and this Court has supplemental jurisdiction over Plaintiff's breach of contract claim. The Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2) because this is a class action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and Plaintiff and certain members of the Class are a citizens of a State different than Ally.[1]

---

[1] ABLT and Ally Financial will be collectively referred to as "Ally", unless otherwise noted.

5. Venue is proper in this District under 28 U.S.C. § 1391(a) because a substantial part of the acts and omissions giving rise to the claims occurred in this District.

6. This Court may exercise personal jurisdiction over Ally pursuant to section 48.193 of the Florida Statutes because this action arises out of Ally, personally or through an agent, operating, conducting, engaging in, or carrying out a business or business venture in this State. Moreover, Ally breached a contract within this State, and personally or through an agent, engaged in substantial and not isolated activity in this State.

### III. SUBSTANTIVE ALLEGATIONS

#### Ally's SmartLease

7. Every year, Ally distributes blank copies of its SmartLease standardized form agreement ("SmartLease") to over 20,000 car dealerships throughout the country. Car dealerships then use the SmartLease to enter car lease agreements with consumer. After the SmartLease is executed, Ally next purchases the leases from the dealerships who check a box on the SmartLease indicating that the lease will be assigned to ABLT or some other Ally affiliated company.

8. On October 21, 2018, Plaintiff Moshe Katzburg entered into a three-year SmartLease with Schumacher Automotive Delray, LLC, ("Schumacher") for a new 2019 Jeep Cherokee. A true and correct copy of the SmartLease is attached hereto as Exhibit "A."

9. At the top of the Katzburg SmartLease, Schumacher checked a box indicating that it would assign the lease and sell the car to ABLT.

10. Section 9 of the SmartLease is entitled "Purchase Option at End of Lease Term," and provides that: "You have an option to buy the vehicle at the end of the lease for $20,956.20, plus official fees and taxes."

11. Section 13 is entitled "Official Fees and Taxes," and provides that: "You will pay all governmental license, title, registration, testing, and inspection fees for the vehicle. You will pay all taxes on the lease, payments due under the lease, or the vehicle that the government levies on you, the vehicle, or us (except our net income taxes). We may change your monthly payment if taxes change. We my bill you separately for official fees and taxes."

12. Section 32 is entitled "Option to Buy the Vehicle," and provides that: "You have an option to buy the vehicle. The price to buy the vehicle after the start of last monthly period is disclosed in Section 9. The purchase option price disclosed in Section 9 is the price for which we would sell the vehicle to you after the start of the last monthly period."

13. Section 32 also provides that" "Regardless of when you buy the vehicle, you must also pay any related official fees and taxes, plus any amounts due because you broke agreements in this lease."

14. Section 34 is entitled "What You Owe If You Buy this Vehicle," and provides that: "If you have paid us the amount you must pay to buy the vehicle under Section 32 and kept your agreements, you will owe us nothing more."

15. At the end of the SmartLease, it states that "THIS IS THE ENTIRE AGREEMENT. This lease contains the entire agreement between you and us relating to the lease of the vehicle. Any change to this lease must be in writing and signed by you and us. No oral changes are binding."

### Katzburg Tries to Purchase his Jeep from Ally

16. Before the end of the lease, Katzburg decided he wanted to purchase his car from Ally in accordance with his SmartLease for $20,956.20, plus official fees and taxes.

17. But Katzburg learned that Ally might not be able to sell him his vehicle.

18. Unsure of what to do, he contacted Ally, first by phone, wherein Ally told him that it could <u>not</u> legally sell him his car in Florida, despite what his SmartLease stated.

19. Wanting to confirm what he had heard orally, Katzburg asked Ally to confirm in writing that it would not purchase his car. During a chat conversation on Ally's website, Katzburg wrote: "I cannot buy the vehicle directly from Ally and I must purchase through a licensed car dealer? Is that correct?"

20. In response, Ally acknowledged that it could not in fact satisfy its duties and obligations under the SmartLease. Specifically, Ally wrote: "In regard to your message . . . the information provided is correct. I sincerely apologize if you are interested [in] purchasing the vehicle, we are unable to facilitate the purchase of your vehicle within the state you reside. However, you can proceed with purchasing your vehicle by visiting a dealership that does business with Ally."

21. Unable to purchase the car from Ally per his SmartLease, Katzburg asked Schumacher about purchasing the car from them. Schumacher told Katzburg that in addition to the $20,956.20 and taxes required by the SmartLease, Katzburg would have to pay approximately $2,000 in additional fees (which included an inspection fee, a dealer fee, and a processing fee) but which were <u>not</u> provided for in the SmartLease. Katzburg declined to purchase the car from Schumacher.

<u>Katzburg Ultimately is Forced to Pay a $500 Processing Fee to Purchase his Car</u>

22. Unable to purchase his car from Ally in accordance with the SmartLease, and not wanting to pay an additional $2,000.00 to buy it from Schumacher, Katzburg found another dealer

willing to sell the car to Katzburg.

23. The dealer, Carlink LLC ("Carlink") explained that the actual process would entail Carlink purchasing the car from Ally and Carlink then selling the car to Katzburg.

24. To start the process, Carlink and Katzburg got Ally on the phone. But Ally initially took the position with Carlink that it would not sell the car to Carlink for less than $25,000, some $4,000 more than the purchase price in the SmartLease. Of course, that meant that Carlink would have to sell the car to Katzburg for at least $25,000, or it would otherwise lose money on the deal.

25. After Katzburg complained, Ally relented and sold the car to Carlink for the Purchase Option Price listed in the SmartLease, or $20,956.20.

26. Katzburg then purchased the car from Carlink for $20,956.20, in addition to official fees and taxes, plus a $500 processing fee.

27. The $500 processing fee is <u>not</u> an official fee or tax. Nor is it mentioned in the SmartLease as a fee that must be paid in order to exercise the purchase option.

28. Thus, to purchase his car, Katzburg was forced to pay $500 more than the Purchase Option Price listed in the SmartLease.

## Ally Financial's Earlier Settlement

29. This is not the first time Ally Financial has been sued in Florida federal court for not fulfilling its duties under its SmartLease. In 2014, Ally Financial was sued for the same exact conduct in a class action styled: *Schreiber v. Ally Financial*, 14:-cv-22069 (S.D. Fla.). After losing an appeal at the Eleventh Circuit regarding the applicability of an arbitration provision not included in the SmartLease, Ally Financial settled the class action for approximately $20 million, whereby

Ally's customers were able to recover up to 100% of the fees they were charged beyond the fees listed in their SmartLease.

## IV. CLASS ACTION ALLEGATIONS

30. Plaintiff brings this Action pursuant to Rule 23(a) and Rule 23(b)(3) of the Federal Rules of Civil Procedure on his own behalf and on behalf of the following Class:

> All persons nationwide who leased a motor vehicle pursuant to a SmartLease Agreement that was assigned to Ally Financial Inc. (or a predecessor in interest or affiliated company, including General Motors Acceptance Corporation, GMAC LLC, GMAC Inc., GMAC Automotive Bank, Ally Bank, Ally Bank Lease Trust or Ally Financial Least Trust), and who subsequently purchased the leased vehicle between June 19, 2018 through the present pursuant to the purchase option provision in the SmartLease Agreement and were required to pay any fee not disclosed in the SmartLease Agreement and/or were required to pay more than the price disclosed in the purchase option provision in the SmartLease Agreement when purchasing the vehicle.

31. Excluded from the Class are Defendants, their parents, subsidiaries and affiliates, their directors, officers, and employees. Also excluded from the Class are the Court, its employees, and Class Counsel.

32. <u>Numerosity</u>: The members the Class are so numerous and geographically diverse that joinder of them is impracticable. While the exact number will have to await discovery, based on the *Schreiber* Action, Plaintiff believes that the Class consists of tens of thousands living in Florida and throughout the United States.

33. <u>Typicality</u>: Plaintiff's claims are typical of the claims of other Class Members and he will fairly and adequately protect their interests. Plaintiff alleges a common course of conduct by Defendants towards Class Members. Plaintiff, like each other Class Member, entered into a SmartLease with Ally and then purchased the vehicle at the end of the lease, ending up paying an

undisclosed fee, or paying more than the purchase price option, or both. Plaintiff and the other Class Members will pursue identical legal theories to recovery their damages.

34. <u>Adequacy</u>: Plaintiff and his counsel will fairly and adequately protect and represent the interests of all Class Members. Plaintiff is committed to the vigorous prosecution of this case and has retained competent counsel experienced in prosecuting class action. The interests of Plaintiff are coincident with and not antagonistic to those of other Class Members.

35. <u>Commonality and Predominance</u>: There exists numerous common questions of law and fact in this case, and these common questions predominate over any questions affecting only individual Class Members. These common questions of fact and law include, but are not limited to:

   a. Whether the SmartLease is a standardized form agreement;

   b. Whether Ally was unable to sell vehicles in accordance with its SmartLease in certain states because it did not have a license to sell cars in this states;

   c. Whether the omissions in Ally's SmartLease violates the federal Consumer Leasing Act and/or Regulation M;

   d. Whether ABLT's failure to sell leased cars back to consumers in according with Ally's SmartLease constitutes a breach of contract; and

   e. Whether Plaintiff and Class Members were damaged as a result of Ally's unlawful acts.

36. <u>Superiority</u>: A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because, among other things, it is desirable to concentrate the litigation of the Class Member's claims in one forum. It will conserve party and judicial resources and facilitate the consistency of adjudications. Furthermore, as the damages

suffered by individual Class Members may be relatively small, their interest in maintaining separate actions is questionable and the expenses and burden of individual litigation makes it impracticable for them to seek individual redress for the wrongs done to them. Plaintiff knows of no difficulty that would be encountered in the management of this case that would preclude its maintenance as a class action.

## V.  CAUSES OF ACTION

### COUNT I
**(Violation of Federal Consumer Leasing Act)**

37. Plaintiff hereby adopts and incorporates by reference paragraphs 1 to 36 as is fully set forth herein.

38. Ally is a lessor under 15 U.S.C. §§ 1667 and 1667a because it is regularly engaged in leasing, offering to lease, or arranging to lease under a consumer lease.

39. Plaintiff's SmartLease with Ally is governed by the disclosure requirements of 15 U.S.C. § 1667a and 12 C.F.R. § 213.4

40. Ally violated 15 U.S.C. § 1667a and 12 C.F.R. § 213.4 by, among other things, failing to disclose that Plaintiff could not purchase the car directly from Ally, failing to disclose that Plaintiff would be required to pay additional fees to a third-party dealer upon purchasing the car, and failing to disclose that Plaintiff could be required to pay more than the price disclosed in the purchase option upon purchasing the car.

41. Ally's violation of 15 U.S.C. § 1667a and 12 C.F.R. § 213.4 was the actual and proximate cause of damages suffered by Plaintiff.

42. Pursuant to 15 U.S.C. § 1640, Plaintiff is entitled to recover his actual damages, statutory damages, costs and attorney fees from Ally.

## COUNT II
### (Breach of Contract)
### (Against ABLT)

43. Plaintiff hereby adopts and incorporates by reference paragraphs 1 to 36 as is fully set forth herein.

44. Plaintiff entered into a contract with ABLT when it accepted to be the assignee of the SmartLease entered into by Plaintiff and Schumacher.

45. Plaintiff has performed all of the obligations under the SmartLease.

46. ABLT materially breached the SmartLease by refusing to sell Plaintiff's car to him at the price listed in the SmartLease, and further by requiring Plaintiff to purchase his car from a third party for a price higher than the price stated in the SmartLease.

47. ABLT's breach was the actual and proximate cause of damages suffered by Plaintiff.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually, and on behalf of all others similarly situated, requests that the Court enter judgment against the Defendants, which:

a. Certifies the proposed Class, designates Plaintiff as the Class Representative of the Class, and designates undersigned counsel as Class Counsel;

b. Awards to Plaintiff and the proposed Class compensatory, actual, statutory, and other damages, including pre- and post- judgment interest, in an amount to be proven at trial;

c. Awards attorney fees and costs, as allowed by law;

d. Awards injunctive relief required Defendants to honor its obligations under its SmartLeases to sell cars directly to consumers for the price listed in its SmartLeases; and

e. Awards such other relief as the Court deems appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable as a matter of right on all counts in this Complaint.

Dated: April 8, 2022

Respectfully submitted,

s/Kevin B. Love
Kevin B. Love
Florida Bar No. 993948
**CRIDEN & LOVE, P.A.**
7301 S.W. 57th Court, Suite 515
South Miami, FL 33143
305-357-9000
klove@cridenlove.com

Robert A. Schreiber
Florida Bar No. 727598
**ROBERT A. SCHREIBER, ESQ. LLC**
14255 S.W. 82nd Court
Miami, FL 33158
305-219-4897
radamschreiber@yahoo.com

*Counsel for Plaintiff and the Proposed Class*